IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **RICHARD NEWKIRK WILDER,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }  Case No.  7:06-CV-1774-RDP |
| | } |
| **SIGMA NU FRATERNITY, et al.,** | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

The court has before it Defendant Sigma Nu Fraternity, Inc.'s Motion to Dismiss (Doc. # 9) filed October 2, 2006.[1] The motion was under submission, without oral argument, as of October 13, 2006.[2] For the reasons outlined below, the court finds that the motion is due to be denied.

**I.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual

---

[1] Although the motion was filed only on behalf of Sigma Nu Fraternity, Inc., it indicates that the arguments therein also apply to Sigma Theta Chapter of Sigma Nu Fraternity, Inc. and Sigma Nu Chapter House Co., Inc. if Plaintiff perfects service on those defendants. (Doc. # 9, at 1 n.1). As of the date of entry of this opinion, the court's docket sheet does not reflect service on either Sigma Theta Chapter of Sigma Nu Fraternity, Inc. or Sigma Nu Chapter House Co., Inc.

[2] The court is aware that Defendant has requested oral argument. However, the court has determined that oral argument is not "necessary [n]or would [it] be helpful to the motion's expedient and appropriate disposition." (Doc. # 10, at 4).

allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original). Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

**II.     Relevant Facts as Alleged in Plaintiff's Complaint**

On September 7, 2006, Plaintiff Richard Wilder brought allegations of negligence; negligent hiring, training, and supervision; assault; battery; trespass; and wantonness against Defendants Sigma Nu Fraternity, Inc., Theta Chapter of Sigma Nu, Sigma Nu Chapter House Co., Inc.,

(hereinafter collectively "Sigma Nu") and Kenneth Gipson. (Doc. # 1). Plaintiff's claims arise out of an incident that took place in the early morning hours of Saturday, September 11, 2004, at a band party held at the Sigma Nu Fraternity house located on the campus of the University of Alabama in Tuscaloosa, Alabama. (Doc. # 1, at 2). Plaintiff, who was a member of Sigma Nu and a student at the University of Alabama, was invited to attend the band party and did, in fact, attend the party. (Doc. # 1, at 2).

During the course of the party, Defendant Gipson and a companion gained access to the fraternity house and were asked to leave by Sigma Nu members who discovered them in the kitchen of the house. (Doc. # 1, at 2-3). Thereafter, an altercation ensued between the Sigma Nu members and Defendant Gipson and his companion wherein some of the Sigma Nu members attempted to throw the men out of the house. (Doc. # 1, at 3). During that altercation, several Sigma Nu members directed racial epithets at Gipson and his companion, who in turn threatened to kill several of the Sigma Nu members involved in the altercation. (Doc. # 1, at 3).

While the Sigma Nu members were throwing Gipson and his companion out of the house, Gipson attacked Plaintiff, who was standing in the front yard of the house, and stabbed Plaintiff on his left temple with a five inch stiletto knife. (Doc. # 1, at 3). Plaintiff suffered severe injuries that required extensive surgeries and medical treatment and that will impair him for the rest of his life. (Doc. # 1, at 3-4).

Plaintiff's complaint directs Count I (negligence) and Count II (negligent hiring, training, and supervision) against Sigma Nu, although Plaintiff's opposition to the motion to dismiss indicates that Plaintiff also claims that the complaint "sufficiently alleges wantonness on the part of Defendant's

3

members." (Doc. # 1, at Counts I-II; Doc. # 11, at 15).³ Plaintiff alleges that Sigma Nu had a duty to protect Plaintiff, an invited guest at the party, from the foreseeable altercation with Gipson, and that Sigma Nu breached that duty by failing to take appropriate advance security measures (including properly registering the band party with the Office of the Dean of Students and employing the requisite security personnel at the party) and failing to promptly contact security personnel and/or the police when the altercation ensued. (Doc. # 1, at 4). Plaintiff further alleges that Sigma Nu negligently trained, supervised, and instructed the officers, leaders, and members of Sigma Nu. (Doc. # 1, at 5).

## III.   Discussion

Defendant's motion makes three primary arguments in favor of dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted: (1) Sigma Nu lacked a duty to protect Plaintiff; (2) Plaintiff's claims fail because of lack of proximate cause; and (3) to the extent Plaintiff's claims rely upon a theory of premises liability, no duty was breached. At this stage of the litigation, accepting all well-pleaded factual allegations in the complaint as true and construing the facts in a light most favorable to Plaintiff, the court is not persuaded by Defendants' arguments.

### A.   Duty

Both parties agree that under Alabama law, a person generally has no duty to protect another from criminal acts of a third person absent a special relationship or special circumstances. *Carroll*

---

³ It is unclear to the court whether Plaintiff intends to assert wantonness as a separate claim against Sigma Nu, or if Plaintiff simply relies on allegations of wantonness in response to Defendant's argument that "Plaintiff has not alleged wantonness or willfulness, so to the extent Plaintiff relies on premises liability law, he fails to state a claim upon which relief can be granted." (Doc. # 9, at 8). The court believes the situation to be the latter. In any event, if Plaintiff intends to assert a separate claim of wantonness against Sigma Nu, he should amend his complaint to properly state such a claim.

*v. Captain D's Restaurant,* 775 So.2d 753, 756 (Ala. 2000); *Hail v. Regency Terrace Owners Assoc.*, 782 So. 2d 1271, 1274 (Ala. 1999); *Moye v. A.G. Gaston Motels, Inc.*, 499 So.2d 1368, 1370 (Ala. 1986). The parties disagree, however, about whether either exception exists in this case. Unless Sigma Nu had a duty to protect Plaintiff, Defendants cannot be "held liable for injuries and damage resulting from . . .[the] criminal acts [of Gipson]." *Moye,* 499 So.2d at 1370.

The Alabama Supreme Court has defined the parameters of the two exceptions to the general "no duty" rule as follows. A "special relationship" requires a relationship either between the premises owner and the third party, or between the premises owner and the plaintiff. *R.B.Z & C.Z. v. Warwick Development Co.*, 681 So. 2d 566, 568 (Ala. 1996). "Special circumstances" exist when the defendant knew, or had reason to know, of a probability of conduct by third persons that would endanger the plaintiff. *Hail*, 782 So. 2d at 1274. Whether a defendant had such "specialized knowledge" depends upon whether the event causing the harm or injury generally was foreseeable. *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 910 (Ala. 2004); *Hail*, 782 So. 2d at 1274; *Warwick Development*, 681 So. 2d at 568-69. With respect to criminal conduct, the Alabama Supreme Court has held: "First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed 'specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a probability." *Carroll*, 775 So. 2d at 756 (Ala. 2000).

Defendant's motion argues that Sigma Nu had no duty to protect Plaintiff for the following reasons: (1) no special relationship existed in this case because "[t]he facts in the Complaint fail to demonstrate the Plaintiff was ever wholly, or even partially dependent on Sigma Nu,"(Doc. # 9, at 5); (2) no special circumstances existed in this case because "the events occurred so quickly and with such unexpected violence that no one at the party could have had knowledge of the probability of

5

Gipson's criminal act," (Doc. # 9, at 6); and (3) Gipson's criminal conduct was not foreseeable nor did Sigma Nu have specialized knowledge of probable criminal conduct because "[t]here is no suggestion the Sigma Nu house was a high-crime area," (Doc. # 9, at 7).

These assertions may ultimately win the case for Defendant. However, at this early stage of the case, without the benefit of any evidence gained through discovery and taking as true all of the complaint allegations, the court cannot conclude that neither exception to the "no duty" rule applies in this case. For example, Plaintiff's complaint clearly alleges facts which, if true, would tend to support the finding that criminal conduct at the band party was foreseeable, including: (1) Sigma Nu's failure to properly register the party with the Office of the Dean of Students; (2) Sigma Nu's failure to ensure the presence of security personnel at the band party; and (3) Gipson and his companion's admittance into the band party. Moreover, Plaintiff has alleged facts that support his claim that Sigma Nu possessed specialized knowledge of probable criminal conduct that could result in injury to Plaintiff. The complaint alleges that *after* the altercation with Gipson ensued, but before Plaintiff was injured, Sigma Nu members not only failed to call the police, but also escalated the situation with retaliatory violence and racial epithets. At that point, Gipson threatened to kill the Sigma Nu members involved in the altercation. Assuming those facts to be true, it appears that Plaintiff was injured by Gipson only after Sigma Nu members knew of a potential risk of violence but instead chose to escalate the situation.[4] Thus, applying the appropriate 12(b)(6) standard of review to these facts, the court finds no basis for dismissal of Plaintiff's claims because of an

---

[4] Defendant's contention that Gipson's threats were not aimed at Plaintiff, and therefore that Sigma Nu possessed no specialized knowledge that Plaintiff himself would be the one injured by Gipson's attack, cuts no ice at all. Defendant's interpretation of "specialized" to mean "direct threat" is exceedingly narrow.

6

absence of duty on the party of Sigma Nu to protect Plaintiff from Gipson's attack.[5]

### B. Proximate Cause

Alternatively, Defendant maintains that dismissal is appropriate because an "'independent, intervening criminal act [was] the proximate cause of [P]laintiff's injuries and not any action or inaction on the part of [Sigma Nu].'" (Doc. # 9, at 7) (quoting *Moye*, 499 So.2d at 1371). The parties agree, however, that a *foreseeable* intervening act does not break the causal relationship between a defendant's actions and a plaintiff's injuries. *Pritchett v. ICN Medical Alliance, Inc.*, -- So.2d --, 2006 WL 573936, at *5 (Ala. Mar. 10, 2006). Thus, a subsequent cause of a plaintiff's injuries is not an "intervening cause" unless it was unforeseeable. *Pritchett*, 2006 WL 573936, at *5; *Thetford v. City of Clanton*, 605 So. 2d 835, 840 (Ala. 1992). As noted earlier, the facts alleged in this case are sufficient to support Plaintiff's claim that Gipson's criminal conduct was foreseeable to Sigma Nu, and thus the court is not persuaded by Defendant's proximate cause argument. In any event, under Alabama law, it is well-established that breach and proximate cause are questions of fact for the jury unless "the evidence establishes no reasonable inference in support of a Plaintiff's claim." *City of Mobile v. Largay*, 346 So. 2d 393, 395 (Ala. 1977).

### C. Premises Liability

Finally, Defendant argues that Plaintiff, who was a social guest at the band party, was a

---

[5] It is axiomatic that Plaintiff need only allege facts sufficient to support one of the exceptions to the "no duty" rule in order to survive Defendant's Rule 12(b)(6) arguments on this issue. Although the court chose to focus on the special circumstances exception, it has not foreclosed the argument that a special relationship existed between the parties as well. Although the parties disagree about the extent to which dependency plays a role in establishing a special relationship, the court is intrigued by Plaintiff's argument that the Sigma Nu members fostered "an atmosphere of violence" which, in turn, rendered innocent bystanders who might be injured dependent upon the Sigma Nu members for protection. (Doc. # 11, at 12). That is an issue for another day, however.

licensee to whom Sigma Nu merely owed the duty not to willfully or wantonly injure him or to negligently injure him after discovering he is in a position of peril. *Lloyd v. Joseph*, 496 So. 2d 771, 773 (Ala. 1986); *Hambright v. First Baptist Church-Eastwood*, 638 So. 2d 865, 868 (Ala. 1994); *Bryant v. Morley*, 406 So. 2d 394, 395 (Ala. 1981). Under Alabama law, "wantonness" is statutorily defined as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). Defendant maintains that Plaintiff has failed to establish the existence of a duty or the breach of such a duty to him as a licensee.

The court is not persuaded by this argument either, because Defendant has not shown that Plaintiff can prove no set of facts to show that Sigma Nu wantonly injured him or negligently injured him after discovering he was in a position of peril. As noted earlier, the complaint alleges facts that, if true, show that Plaintiff was injured by Gipson only after Sigma Nu members knew of a potential risk of violence - including Gipson's threats to kill Sigma Nu members - but instead chose to escalate the situation. Plaintiff's complaint states a viable claim for premises liability and therefore, Defendant's motion to dismiss on that basis is due to be denied.

**IV.     Conclusion**

For the reasons stated above, Defendant's motion to dismiss is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this     17th      day of October, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE