IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **RICHARD NEWKIRK WILDER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No. 7:06-CV-1774-RDP |
| } | |
| **SIGMA NU FRATERNITY, et al.,** } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

The court has before it Plaintiff's Motion for Summary Judgment filed August 19, 2009. (Doc. # 79). Plaintiff seeks judgment in the amount of $10,622,818.65 on his claims against the remaining Defendant in this case, Kenneth R. Gipson. As of the date of entry of this order, the court has not received a response to the motion from the Gipson. For the reasons outlined below, the court finds that there are no disputed issues of material fact and Plaintiff is entitled to judgment as a matter of law on liability. Therefore, Plaintiff's motion (Doc. # 79) is due to be granted.

**I.      Procedural History**

On September 7, 2006, Plaintiff Richard Wilder initiated this action against Defendants Sigma Nu Fraternity, Inc. ("Sigma Nu"), Theta Chapter of Sigma Nu ("Theta Chapter"), Sigma Nu Chapter House Co., Inc. ("Chapter House"), and Kenneth Gipson ("Gipson"). (Doc. # 1). On January 18, 2007, Plaintiff filed an Amended Complaint. (Doc. # 23). On April 18, 2007, Plaintiff requested that the court dismiss Defendant Theta Chapter (Doc. # 39, ¶ 4), and on June 12, 2007, and that entity was dismissed. (Doc. # 44). On February 29, 2008, Defendants Sigma Nu and Chapter House moved for summary judgment on all of Plaintiff's claims against them. (Doc. # 54).

On September 15, 2008, summary judgment was entered in favor of all remaining organizational defendants, leaving Gipson as the sole remaining defendant in the case. (Doc. # 70).

**II.   Relevant Undisputed Facts**

Plaintiff's claims arise out of an incident that took place in the early morning hours of Saturday, September 11, 2004, at a band party held at a house rented by the Theta Chapter of Sigma Nu located on the campus of the University of Alabama in Tuscaloosa, Alabama. (Doc. # 1, at 2). Plaintiff received an invitation and attended the band party. (Doc. # 1, at 2). Numerous members of the Theta Chapter of Sigma Nu were present at the party, including members John Lindsey, Hunt Mobley, Matt McLin, Tod Singleton, Chase Elmore, Will Stewart and Colin Broder. (Broder at 13-14, 25; Elmore at 14-15, 31-32; Lindsey at 9, 39; McLin at 12, 21-26, 62; Mobley at 13-15, 18-19; Singleton at 11-12, 29-32; Stewart at 20-21, 33-34).

During the early hours of the morning of September 11, 2004, as the party was ending and after the band hired for the party had stopped playing, the front door of the fraternity house was unlocked and opened. (Lindsey at 62-63). Kenneth Gipson and Reginald Barnes, who were neither members of the fraternity or guests, entered the house through the front door. (Lindsey at 62-63). As he was exiting the front door of the house, Mobley observed Gipson and Barnes entering the house. (Mobley at 26). Mobley was suspicious of Gipson and Barnes, and re-entered the house in order to observe them. (Mobley at 47-48). Mobley then observed one of them pick up a set of keys that were on a table. (Mobley at 47-48). Mobley was concerned about leaving Gipson and Barnes in the house since some of the bedrooms in the house have open doors. (Mobley at 48-49). Mobley then solicited the help of McLin and Elmore to remove Barnes and Gipson from the house. (Elmore at 43-45; McLin at 98-99; Mobley at 26-28, 48-51).

Mobley, Elmore and McLin confronted Gipson and Barnes in the dining area. (Elmore at 45-48; McLin at 64, 99; Mobley at 28-29, 51-52). At that time, Barnes was pulling two bottles of beer out of an icemaker. (Elmore at 46-48; McLin at 64; Mobley at 29, 53-55). Mobley, Elmore and McLin suspected that Gipson and Barnes were stealing someone else's beer; in fact, Elmore believed that it was Elmore's bottled beer that Gipson and Barnes were stealing. (Elmore at 47-48; McLin at 100; Mobley at 83-84). Mobley questioned Barnes and Gipson about the beer and who, if anyone, they knew at the house. (McLin at 64-65, 100). Mobley, Gipson and Barnes exchanged words, and the conversation became heated. (Elmore at 49; McLin at 67; Stewart at 40-42).

At some point in the dining room, Gipson pulled a knife, but once things cooled off, Gipson lowered and concealed the knife. (Gipson Aff. at ¶ 13; Stewart at 46-47). Gipson and Barnes then backed out of the front door of the house into the front lawn area, still followed by several Theta Chapter members. (Mobley at 71-72; Elmore at 61-62; Gipson Aff. at ¶ 14; McLin at 81). Gipson and Barnes walked through the front lawn up to the sidewalk bordering University Boulevard. (Broder at 31-32; Elmore at 65; McLin at 85-86; Mobley at 72-73). When Gipson and Barnes arrived at the sidewalk, Barnes still had the two bottles of beer that he had taken from the icemaker. (Broder at 36-37; McLin at 90-91; Mobley at 73).

Gipson, looking at the crowd in the direction of Plaintiff and McLin, made a statement to the effect that he would kill them if he ever saw them again. (Elmore at 63; McLin at 88-89; Mobley at 75-76). Barnes then threw one or more of the beer bottles that he had taken from the icemaker and hit one or more Theta Chapter members. (Elmore at 66; Gipson Aff. at ¶ 16; McLin at 90; Mobley at 76-77). Immediately thereafter, the situation became violent and Gipson moved toward Plaintiff and stabbed him in the head with the butterfly knife. (McLin at 91, 93, 128).

3

When it was discovered that Plaintiff had been injured, the police were called to the scene. (Elmore at 71-72; Mobley at 77-80; Stewart at 52-53). Gipson fled the state, but was later arrested, returned to Alabama, and charged with attempted murder. (Simpson at 68-72). Gipson admitted stabbing Plaintiff. (Simpson at 68-72).

Plaintiff has incurred $768,244.65 in reasonable and necessary medical expenses to treat injuries caused by Gipson. (Doc. # 77-2; Doc. # 78). Plaintiff has presented evidence, which is undisputed by Defendant, that he will incur $6,648,072.00 in reasonable and necessary future life care expenses, discounted to October 19, 2009, as a result of the injuries caused by Gipson. (Doc. # 77-2; Doc. # 78).

Plaintiff has presented evidence, which is again undisputed by Defendant, that he has suffered $446,963.00 in lost wage income as a result of injuries caused by Gipson. (Doc. # 77-2; Doc. # 78). He has further presented undisputed evidence that he will suffer $2,759,539.00 in lost wage income/earning capacity, discounted to October 19, 2009, as a result of injuries caused by Gipson. (Doc. # 77-2; Doc. # 78).

### III.   Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted. *See id.* at 249. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The method used by the party moving for summary judgment to discharge its initial burden on the motion depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115–17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). Where, as here, the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

**IV.    Applicable Substantive Law and Analysis**

Plaintiff maintains claims of (1) assault, battery and trespass, and (2) wantonness against Gipson and requests money damages on those claims.

A.   **Plaintiff is Entitled to Summary Judgment on His Claims of Assault, Battery and Trespass against Gipson**.

To establish an assault and battery claim, a plaintiff must prove that (1) the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) the touching was conducted in a harmful or offensive manner. *Harper v. Winston County*, 892 So.2d 346, 353 (Ala. 2004). Without question, the undisputed facts establish Plaintiff's assault and battery claim: Gipson, looking at the crowd in the direction of Plaintiff and McLin, made a statement to the effect that he would kill them if he ever saw them again. (Elmore at 63; McLin at 88-89; Mobley at 75-76). The situation became violent and Gipson moved toward Plaintiff and stabbed him in the head with the butterfly knife. (McLin at 91, 93, 128). Gipson's intent can be inferred from his threat, from his movement toward Plaintiff, and the fact that he stabbed him. Moreover, all of the Rule 56 evidence in this case points to a conclusion that Gipson assaulted and battered Plaintiff. Therefore, Plaintiff is entitled to judgment as a matter of law on his assault, battery and trespass claim against Gipson.

B.   **Plaintiff is Entitled to Summary Judgment on His Claim of Wantonness Against Gipson**

"To establish wantonness, plaintiffs must demonstrate 'that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains.'" *Davis v. Wal-Mart Stores, Inc.*, 64 F.Supp.2d 1176, 1178 (M.D. Ala. 1999) (quoting *Martin v. Arnold*, 643 So.2d 564, 567 (Ala. 1994)). A wantonness claim requires a higher degree of culpability than a mere negligence claim.

> Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as ... a conscious ... act. Simple negligence is the inadvertent omission of duty; and wanton

or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.

*Tolbert v. Tolbert*, 903 So.2d 103, 114-15 (Ala. 2004) (internal citations and quotations omitted).

The same undisputed facts which establish Plaintiff's assault and battery claim are more than sufficient to establish his wantonness claim. Again, Plaintiff has presented undisputed evidence of Defendant's threat to kill, Defendant's intentional movement toward Plaintiff with a knife, and that Defendant stabbed Plaintiff in the head. (Elmore at 63; McLin at 88-89, 91, 93, 128; Mobley at 75-76). Gipson's threat and movement toward Plaintiff with a knife in a stabbing movement show that he consciously caused injury to Plaintiff. Based upon the Rule 56 record evidence, there is no disputed material issue of fact to be decided here because no person could reasonably believe that stabbing another person in the head with a knife would *not* cause serious injury or death. Therefore, Plaintiff is entitled to judgment as a matter of law on his wantonness claim against Gipson.

    **C.**    **Damages**

Although Plaintiff is entitled to summary judgment on the issue of liability, the court will submit the issue of damages to a jury in accordance with the jury demand contained in Plaintiff's Amended Complaint. *See, e.g., Dorsey v. United Parcel Service,* 195 F.3d 814, 818 (6th Cir. 1999); *U.S. E.E.O.C. v. Catholic Healthcare West*, 530 F.Supp.2d 1096, 1110 (C.D. Cal. 2008); *Transure Services, Inc. v. Brokerage Professionals, Inc.*, 2007 WL 2253465 *5 (E.D. Pa. 2007).

**V.**    **Conclusion**

Plaintiff has carried his burden of demonstrating the absence of any material factual dispute and that he is entitled to judgment as a matter of law as to all claims asserted against Gipson.

A separate order will be entered.

**DONE** and **ORDERED** this ____21st____ day of September, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE